IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-604

JEFFREY DAVIS

    Plaintiff,

v.

KETURAH YOUNG (Naphcare Nurse)

DANIEL MEYER (Naphcare Physician Assistant)

    Defendants.

_____

**CIVIL RIGHTS COMPLAINT WITH REQUEST FOR TRIAL BY JURY**

_____

Plaintiff Jeffrey Davis, by and through his attorney, the Law Offices of Daniel R Shaffer, complains against Defendants and requests a trial by jury as follows:

### I. INTRODUCTION

1. This is an action brought by Jeffrey Davis, a 49-year-old man with a permanent impairment, to vindicate serious deprivations of his constitutional rights.

2. Mr. Davis is a former pretrial detainee at Mesa County Detention Facility ("MCDF") who suffered a fractured hand after an altercation involving other inmates.

3. This injury would have healed without incident had it not been for the reckless, and deliberately indifferent medical treatment that he received in jail.

4. Mr. Davis arrived at MCDF on February 7, 2024.

5. Mr. Davis was involved in an altercation with other inmates on February 17, 2024.

6. Deputy Benjamin, Sgt McCabe, Deputy Baker, Deputy Jensen, Deputy Hope, Deputy Brammer, Deputy Little-Fawn and Deputy Medrano, along with Defendant Nurse Young and medical staff responded to the altercation.

7. Deputy Jenson was responsible for handcuffing and securing Mr. Davis while other deputies secured other inmates.

8. This altercation led to Mr. Davis having injured his hand and it was observed to be "severely swollen" and injured needing medical attention.

9. Mr. Davis told Deputies that his involvement in the altercation was in defense of another inmate getting attacked and in self-defense against the attacking inmate.

10. Medical staff at MCDF were consciously aware that Mr. Davis had an injured hand, and that he needed further evaluation and x-ray.

11. Despite the awareness of Mr. Davis's injury and need for subsequent care, he did not receive proper treatment for his hand for over a year.

12. Mr. Davis was forced to live with a shattered unset bone in his hand for over a year, despite objective medical evidence confirming a displaced fracture in March 2024.

13. Instead of timely orthopedic intervention, Defendants buried Mr. Davis's grievances in bureaucracy and allowed his hand to heal in a twisted malunion, and delayed definitive surgery until February 2025. Mr. Davis is left with permanent disfigurement and the loss of function in three fingers.

14. Defendants' conduct, under color of state law, proximately caused the deprivation of Mr. Davis's federally protected rights.  Defendants' conduct, done willfully, wantonly and negligently, also gives rise to supplemental state claims.

## II. JURISDICTION, VENUE, AND NOTICE

15. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988.  The Jurisdiction of this Court is further invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201.

16. This case is instituted in the United States District Court for the District of Colorado pursuant to 28 U.S.C. §1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

17. Supplemental pendent jurisdiction is based on 28 U.S.C. §1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

## III. PARTIES

18. Plaintiff Jeffrey Davis is a resident of the State of Colorado and a citizen of the United States of America.

19. On information and belief, at all times relevant hereto, Defendant Nurse Keturah Young was staffed by Naphcare at the Mesa County Detention Facility, 215 Rice Street, Grand Junction, CO 81502.

20. On information and belief, Defendant Young is a resident of Colorado and a citizen of the United States of America.

21. On information and belief, at all times relevant hereto, Defendant Daniel Meyer PA was a Physician Assistant staffed by Naphcare at the Mesa County Detention Facility, 215 Rice Street, Grand Junction, CO 81502.

22. On information and belief, Defendant Meyer is believed to be a resident of Colorado and a citizen of the United States of America.

23. All the hereinafter complained of unprivileged conduct by individual Defendants was under color of state law for purposes of 42 U.S.C. § 1983. Defendants' actions were undertaken in bad faith, willfully, recklessly, and/or with such gross negligence as to indicate wanton disregard and deliberate indifference to Plaintiff's civil rights, and/or as a delegated decision makers for entity Defendants as to the decisions challenged herein.

24. At all times relevant to this Complaint, all Defendants, their agents and employees, were acting under color of state law for purposes of 42 U.S.C. § 1983.

## IV. STATEMENT OF FACTS

**Defendants Ignored Objective Medical Evidence of a Displaced Fracture, Choosing Ineffective Conservative Measures over Necessary Intervention**

25. Mr. Davis lost most of the use and functionality of his hand as a result of the treatment and lack thereof he received while incarcerated at MCDF.

26. Jeffrey Davis did not have this injury before his incarceration at MCDF.

27. As a result of his injuries, without proper care Mr. Davis had an unset, broken hand, that has now resulted in a disfigured and agonizing permanent injury.

28. In February 2024, Mr. Davis was arrested in connection with a burglary.

29. At the time of his arrest, Mr. Davis did not have an injury to his hand

30. On February 17, 2024, Mr. Davis sustained a severe hand injury during an altercation with other inmates.

31. Although medical staff observed significant swelling, they callously dismissed the severity of the trauma, providing him nothing more than a cold pack, acetaminophen, and a simple wrap

32. Mr. Davis asked multiple times regarding the X-ray that he was told would take place.

| | | | |
|---|---|---|---|
| Medical Provider | 2/22/2024 | Kite: "I have a broken hand right hand several nurse have acknowledged its obvious break due to logged injury I was told it would be x rayed Tuesday by tech but was not seen even though tech showed up at facility Tuesday .my hand is now healing disfigured with pain and distinct deformality and I was onlyd." | 2/27/2024 |
| Medical Provider | 2/27/2024 | Kite: "This med provider is knowingly denying me basic care for a known broken hand no x rays they stopped giving me meds I'm in pain hand is disfigured due to lack of proper med treatment I'm seeking legal rep for this issue and need care now purple blue loss of movement getting worse faily." | 2/27/2024 |

33. It wasn't until February 27, 2024 that an x-ray objectively confirmed the catastrophic nature of the injury, a displaced oblique fracture of the distal metadiaphysis of the fifth metacarpal. The diagnostic evidence proved indisputably that Mr. Davis suffered from a serious medical need requiring urgent attention.

**RADIOLOGY REPORT**

HAND 2V, RIGHT

Results: Mildly displaced oblique fracture involving the distal metadiaphysis of the fifth metacarpal.. There is associated soft tissue swelling.

Conclusion: Mildly displaced oblique fracture involving the distal metadiaphysis of the fifth metacarpal.

Electronically signed by MARC AWOBULUYI, M.D., PH.D. 2/27/2024 8:39:19 PM EST.



34. Despite processing x-ray confirmation of a displaced fracture, Defendants failed to set the bone or arrange for immediate orthopedic intervention. Instead of stabilizing the fracture to ensure proper healing, Defendant's abandoned Mr. Davis with an unset, broken hand, marking the beginning of prolonged and agonizing denial of constitutionally required care.

35. Mr. Davis complained of significant pain in his hand and requested follow ups as swelling increased and loss of function began.

36. On March 26, 2024, a second Xray was performed that showed the break had not healed and was still displaced.

37. Defendant Meyer did not change or adjust treatment plans, and continued to provide inadequate treatment for Davis' injury, providing a simple splint, bandage, and occupational therapy.

**Defendants Knowingly Disregarded Numerous Grievances and Visible Deformity for Nine Months**

38. For Months Mr. Davis submitted numerous kites and grievances describing his extreme pain, the visible deformity of his hand, and his growing desperation. He explicitly informed staff that his hand was disfigured and that he was suffering daily.

39. Mr. Davis submitted numerous kites a month, beginning in February 2024, and spanning through February 2025.

40. Mr. Davis submitted over 50 kites to medical staff between February 2024 and 2025. That number includes requests for medical attention, concerns regarding lack of healing, pain, discoloration, disfigurement, complications with function or use, and the impact it had on his mental health.

41. Mr. Davis described over the months of discoloration and an inability to use his hand. Mr. Davis informed medical staff that it was affecting his mental health.

42. Defendant's responses to these urgent cries for help were woefully inadequate. They routinely acknowledged receipt of his grievances without acting, closed tickets as 'completed' without providing treatment, or simply ignored them entirely, demonstrating a conscious disregard for his suffering.

43. On April 24, 2024, Davis reached out to Administrative Staff for intervention due to his requests for care being ignored and denied, Tucker Osborne denied and closed his request on purely procedural grounds, instructing Mr. Davis to "send the request to medical" rather than addressing the obvious and urgent medical need before him, and ignoring the fact, that the requests for medical were not being properly responded to.



44. Therapy was provided but continued to cause more pain and create additional problems like numbness and swollen purple fingers with shooting pain that caused difficulties sleeping and progressed into depression. Mr. Davis alerted staff of this on April 18, 2024, and didn't get a response until April 26, 2024 with a notice that they will set an appointment with his provider.

**Request Info**

Status: CLOSED by Heather Stanford
Facility Deadline: 05/02/24 23:59

**Summary of Request:**

Orthopedic treatment

**Details of Request:**

Please enter your DOB.:
110276

What is your request?:
Evetr since therapy my hand is more numb and in other parts more swollen purple and shooting pain is persistent pain causing sleeplessness and depression fingers still going in wrong access movement disfigurement and displacement pain is becoming unbearable due to high med tolerance need provider.

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/26/24 22:12 | Heather Stanford | Staff Response | Rescheduled to see provider to discuss. Thank you |
| 04/26/24 22:12 | Heather Stanford | Changed Status | From 'Open' to 'Closed' |
| 04/20/24 14:19 | JEFFREY DAVIS | Viewed Staff Response | |
| 04/18/24 12:40 | JEFFREY DAVIS | Submitted New | Orthopedic treatment |

45. Davis continued to request attention and care for his hand as the pain increased substantially and became unbearable, begging for an orthopedic specialist to take a look at it, with those requests being deferred or promised to be scheduled.

**Summary of Request:**

Ongoing hand injury

**Details of Request:**

Please enter your DOB.:
110276

What is your request?:
Hand has continued pain disfigurement and loss of some use due to medical staff failing to take me to the hospital to have bone set and not even xraying hand until 3weeks after staff new it was broken.I need pain meds that will actually remove the pain Please give me proper care and meds

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 09/10/24 15:57 | Haley Geisner | Staff Response | You have been scheduled to be seen by medical. Please review your handbook to see associated costs |
| 09/10/24 15:57 | Haley Geisner | Changed Status | From 'Open' to 'Closed' |
| 09/07/24 20:25 | JEFFREY DAVIS | Submitted New | Ongoing hand injury |

46. Davis's first evaluation by an orthopedic specialist did not occur until October 22, 2024.

47. On October 22, 2024, specialist Nathan Patrick confirmed the inevitable and tragic result of this neglect: the fracture had healed in a displaced position, resulting in a malunion

```
EXAM DESCRIPTION:   XR hand RT min 3V

FINDINGS:  Three view radiographs of the right hand were performed.
These images demonstrate evidence of a small finger metacarpal neck
malunion with translation the head radially.  There is evidence of
significant shortening and a flexion deformity present.

Electronically Signed By: Nathan Patrick on 10/22/2024 5:41 PM

This document was created all, or in part, using unedited voice
recognition software, and may contain errors of usage, spelling, and
grammar.
```

48. Because Defendants refused to act when the injury was fresh, Mr. Davis now required an osteotomy, a gruesome procedure involving the re-breaking of his bone, and fixation with screws. The procedure was scheduled for November 6, 2024.

```
Plan
Provided the patient's radiographic deformity and functional limitations noted on
clinical
examination, have recommended surgery by means of a right small finger metacarpal neck
corrective
osteotomy, in conjunction with an extensor tenolysis and MP joint arthrotomy.  The risks
and
```

### Defendants Failed to Adequately Treat an Acute Infection, Further Delaying Corrective Surgery

49. On November 4, 2024, Mr. Davis reported to Defendant Meyer of a severe earache, and medical notes documented otitis externa with discharge pressing against the tympanic membrane. This acute infection presented a clear barrier to any upcoming surgical procedures, yet Defendants failed to treat it aggressively.

```
Daniel Meyer PA POSTED ON 11/4/2024 6:05:53 PM CST                                    Type: MEDICAL
Addendum to note below. Patient seen for otitis externa today. Discharge and drainage up against the R TM. Appropriate to order otic antibiotics to treat.
```

50. Davis ultimately had to postpone surgery due to his ear infection, but Defendant Meyer presented it as Davis had refused his surgery do to "his ear hurting" and did not reschedule the surgery for Davis.

> SOAP NOTE BY: Daniel Meyer PA POSTED ON 11/6/2024 2:19:03 PM CST        Type: MEDICA
>
> **Subjective**
>
> Pt. refused his surgery because he said his ear was hurting. We had seen him and diagnosed with the ear infection previously and ordered the appropriate medication for treatment, but we awaiting topical ab drops from the pharmacy. I explained that to the patient and it is likely he was aware of that from the staff at the medline too. I explained that his refusal is unfortunate considering the amount of time we have spent working towards a solution to his finger problem. He voiced understanding.

51. Defendant Meyer knew that his ear infection was not responding to medications and that it continued to get worse to no avail on November 8, November 12, November 15, 2024, and again on November 21, 2024. Davis was still battling an ear infection that should have been treated aggressively to prevent the rescheduling of a much-delayed necessary surgery. He did not get a response regarding the escalation of the infection until November 25, and the issue was not addressed by staff

> **What is your request?:**
> I have an ear infection using yellow white green puss that runs out my ear its getting worse and knife like pain now occurring in specific locations in brain and sinus and duct infection areas. I've been voicing my concerns to med staff daily but as usual I'm being ignored with deliberate indifferenc

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 11/25/24 16:00 | Jessica Busheri | Staff Response | Hello, You were seen by the provider for this issue on 11/04/24, 11/06/24, and 11/21/24 and have been issued antibiotics for |

DAVIS, JEFFREY REAGAN 359950 (202400000688)

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
|  |  |  | treatment. Thank you. - Medical |
| 11/25/24 16:00 | Jessica Busheri | Changed Status | From 'Open' to 'Closed' |
| 11/24/24 08:24 | JEFFREY DAVIS | Viewed Staff Response |  |
| 11/21/24 15:40 | JEFFREY DAVIS | Viewed Staff Response |  |
| 11/12/24 19:01 | JEFFREY DAVIS | Submitted New | Emergency |

52. Consequently, the corrective hand surgery scheduled for November 6, 2024, did not proceed. Defendant Daniel Meyer documented that Mr. Davis "refused" surgery due to ear pain, mischaracterizing a medical necessity as patient non-compliance.

53. Defendant Meyer then chastised Mr. Davis, calling the cancellation "unfortunate considering the amount of time we have spent working towards a solution". The statement ignored the reality that the facility's own failure to effectively treat the ear infection prior to the surgical date caused the delay.

54. Despite reports of pain and discharge continuing through December 7, 2024, Mr. Davis was prescribed only Ofloxacin drops, a minimal intervention that failed to resolve the infection in time to save the surgical appointment and continued to be in pain for over a month due to inadequate treatment of an ear infection.

### The Unconscionable One-Year Delay Resulted in Permanent Deformity and Loss of Function

55. Definitive surgery was not performed until February 21, 2025, more than one full year after Mr. Davis sustained the initial injury. This unconscionable delay forced Mr. Davis to endure twelve months of unnecessary pain and functional limitation.

56. Because of this delay, the surgery required re-breaking the malunited bone (osteotomy), a highly invasive procedure that would have been completely unnecessary had Defendants acted responsibly in February 2024.

57. Post operative occupational therapy concluded July 2025 with devastatingly poor outcomes. Despite the late attempt at surgical correction, the damage caused by the year long delay proved irreversible.

58. Today Mr. Davis suffers from permanent disfigurement, an inability to close his hand, and the total loss of use in three fingers. These life altering injuries are solely attributed to the Defendants deliberate indifference and refusal to provide timely care.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

(Deliberate Indifference to Serious Medical Need in violation of the 14th Amendment)

(Against all Individual Defendants)

59. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

60. 42 U.S.C. § 1983 provides that:

    Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

61. Plaintiff in this action is a citizen of the United States and all of the Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

62. Plaintiff had a clearly established right under the Fourteenth Amendment to be free from deliberate indifference to his known serious medical needs and to proper medical care while in custody.

63. All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law.

64. On information and belief, all individual Defendants to this claim, at all times relevant hereto, were acting and/or failing to act pursuant to municipal custom, policy, decision, ordinance, regulation, habit, usage, or practice in their conduct pertaining to Plaintiff.

65. Individual Defendants actually knew of Mr. Davis's injury and nonetheless, denied him appropriate care. They did so despite being expressly aware of Plaintiff's known serious medical needs and recklessly disregarding a substantial risk of permanent physical harm to Plaintiff.

66. Individual Defendants continued to act in bad faith and with deliberate indifference to Plaintiff's serious medical needs and constitutional rights when they willfully ignored his repeated requests for medical attention and intentionally denied and/or delayed his access to medical care.

67. On information and belief, individual Defendants' actions were undertaken in bad faith and indicate a willful and wanton disregard and deliberate indifference to Plaintiff's civil rights.

68. Each of the individual Defendants is individually liable to the Plaintiff for violation of 42 U.S.C. § 1983.

69. The acts or omissions of all individual Defendants were conducted within the scope of their official duties or employment.

70. The acts or omissions of all individual Defendants were moving forces and substantial significantly contributing proximate causes of Plaintiff's injuries.

71. The acts or omissions of Defendants as described herein intentionally deprived

Plaintiff of his constitutional rights and caused him other damages.

72. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered injuries, damages and losses as described herein entitling him to compensatory and special damages including attorneys' fees in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred significant special damages, including medically related expenses and will continue to incur further medically related expenses in amounts to be established at trial. He has also suffered lost future earnings and impaired earnings capacities in ongoing amounts to be ascertained in trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

73. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## VI. PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and enter the following relief:

1. Award Plaintiff compensatory, non economic, consequential and economic damages as proven at trial against all of the Defendants;
2. Award Plaintiff special damages as proven at trial;

3. Award Plaintiff punitive damages relating only to the federal claims brought in this matter against individual Defendants and private corporate Defendants;

4. Award Plaintiff attorneys' fees and costs pursuant to the provisions of 42 U.S.C. §1988;

5. Award Plaintiff attorneys' fees and costs as provided for under all applicable federal and state statutes;

6. Award Plaintiff actual and treble damages as well as attorneys fees and costs under the CCPA.

7. Award Plaintiff interest from the earliest possible date under appropriate federal and state statutes;

8. All other appropriate relief at law and equity.

PLAINTIFF RESPECTFULLY REQUESTS A JURY TRIAL ON ALL TRIABLE ISSUES.

Respectfully submitted this 15th day of February, 2026.

/s/Daniel R. Shaffer
DANIEL R. SHAFFER, No. 35661
Attorney for the Plaintiff
Dated: February 15, 2026
